**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES KELLEHER and YOAV YAAKOBY, individually and on behalf of all other similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 09 C 5772** |
| **EAGLERIDER, INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Yoav Yaakoby and James Kelleher have sued Eaglerider, Inc., claiming that it violated the Fair and Accurate Credit Transactions Act of 2003 (FACTA) by exposing their credit card numbers and expiration dates on receipts for motorcycle rental transactions.  Both allege that the online booking confirmations they viewed on their computer screens after making rental reservations on Eaglerider's website (the screenshots) are "electronically printed" receipts subject to FACTA's truncation requirements.  Additionally, Yaakoby contends that Eaglerider violated FACTA by providing him with paper receipts containing extra digits of his credit card number, as well as its expiration date.  Yaakoby and Kelleher both seek statutory damages.

Eaglerider has moved for summary judgment on two grounds.  First, Eaglerider contends that the plaintiffs' claims fail as a matter of law because the screenshots

containing the allegedly illegal information are not "receipts" within the meaning of FACTA. Second, Eaglerider argues that Yaakoby waived any potential FACTA claims by signing and initialing release forms that accompanied his rental contract.

For the reasons stated below, the Court grants summary judgment in favor of Eaglerider with respect to all of Kelleher's claims and Yaakoby's claims that arise out of the screenshots but otherwise denies Eaglerider's motion.

### Background

The following facts are not in dispute and can be found in the statements of material facts provided by Eaglerider and the plaintiffs pursuant to Local Rule 56.1(b)(3) (Def.'s Stmt. and Pls.' Stmt.).

Eaglerider is a California corporation that bills itself as "the world's largest motorcycle tourism company." Def.'s Stmt. ¶ 2. Its principal place of business is in Los Angeles, but the company also operates a rental facility in Berwyn, Illinois. *Id.* Customers can reserve and pay for a motorcycle rental through Eaglerider's website. *Id.* ¶ 8. After a customer makes a booking on the website, he views a confirmation screen that displays the details of the rental location, time and vehicle as well as the amount charged to his credit card. *Id.* ¶ 12.

On September 1, 2009, James Kelleher made a motorcycle rental reservation using Eaglerider's website. After submitting his personal and credit card information, Kelleher viewed his booking confirmation on the website. The confirmation screen displayed, among other information, his credit card's expiration date. Def.'s Stmt. ¶ 18; Pls.' Stmt. ¶ 10. Kelleher never went to Eaglerider's Berwyn location to pick up his

2

motorcycle. For this reason, he never received a paper receipt or signed any documentation relating to the rental. Pls.' Stmt. ¶¶ 5-7.

On September 11, 2009, Yoav Yaakoby also made an online reservation with his credit card through Eaglerider's website. Pls.' Stmt. ¶ 8. After completing his booking, Yaakoby—like Kelleher—viewed a confirmation screen that displayed the expiration date of his credit card. Def.'s Stmt. ¶ 15; Pls.' Stmt. ¶ 10.

Unlike Kelleher, Yaakoby picked up his motorcycle from Eaglerider's Berwyn rental facility. Pls.' Stmt. ¶ 11. When he arrived at the facility, Yaakoby received a rental contract containing several documents. One of these was a "Rental Out" form, which revealed the expiration date of Yaakoby's credit card. Def.'s Stmt. ¶ 31. Another was a "Terms and Conditions" form, which included an empty line for the renter to sign his initials in order to indicate agreement to an attached list of terms and conditions. *Id.* ¶ 27. Yaakoby placed his initials on this form. *Id.* He also signed a separate "Motorcycle Rental Release of Liability" form. *Id.* ¶ 30. Upon returning the motorcycle to Eaglerider the following day, Yaakoby received a "Rental In" form, which also displayed his credit card's expiration date as well as its first four and last four digits. *Id.*; Pls.' Stmt. ¶ 28.

FACTA prohibits any "person that accepts credit cards or debit cards for the transaction of business" from "print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). The prohibition applies only to receipts that are "electronically printed." *Id.* § 1681c(g)(2).

3

**Discussion**

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica*, LLC, 526 F.3d 1099, 1104 (7th Cir. 2009). A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary judgment is appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Eaglerider presents two arguments in support of summary judgment. First, Eaglerider contends that the plaintiffs' FACTA claims arising out of the screenshots fail as a matter of law because such screenshots are not "electronically printed" receipts under 15 U.S.C. § 1681c(g)(2) and thus are not subject to the truncation requirements of § 1681c(g)(1). Second, Eaglerider argues that Yaakoby (but not Kelleher) released all of his FACTA claims when he initialed and signed release forms accompanying his rental contract.

## A.    "Electronically printed" receipts

Eaglerider argues that FACTA does not apply to the screenshots presented by the plaintiffs because "FACTA expressly limited the application of its truncation requirements to printed receipts that a vendor provides to a customer." Def's Mem. 10-

4

11. The plaintiffs argue that there is no basis in FACTA for treating the screenshots differently from ordinary paper receipts.

Both sides cite a good deal of non-binding authority to support their respective arguments. However, a recent Seventh Circuit decision—released after the parties submitted their briefs in this case—resolved the dispute, at least for this Court's purposes. In *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010), the plaintiff purchased contact lenses over the Internet from the defendant and received an e-mail confirmation containing the expiration date of his credit card. *Id.* at 795. The court considered whether this email was an "electronically printed" receipt within the meaning of FACTA, noting that the question was one of first impression at the appellate level. *Id.* at 796. Answering in the negative, the court concluded that "what FACTA covers are *printed* receipts. . . . [W]hen one refers to a printed receipt, what springs to mind is a tangible document." *Id.* at 798-99 (emphasis in original). The court then engaged in a thorough discussion of the ordinary meaning of the word "print" and the context in which Congress enacted section 1681c(g), concluding that "[i]n short, 'the language of § 1681c(g) as a whole clearly shows that the statute contemplates transactions where receipts are physically printed using electronic point of sale devices like electronic cash registers or dial-up terminals.' " *Id.* at 801 (quoting *Narson v. Godaddy.com, Inc.*, No. CV-08-0177, 2008 WL 2790211, at *6 (D. Ariz. May 5, 2008)).

*Shlahtichman* demonstrates that, at least in the Seventh Circuit, Internet confirmations such as those Yaakoby and Kelleher received do not fall within the ambit of FACTA. Accordingly, the plaintiffs' screenshot claims fail as a matter of law.

5

## B.      Release

Eaglerider next argues that Yaakoby released all of his FACTA claims by signing and initialing the "Motorcycle Rental Release of Liability" and "Terms and Conditions" forms.  Because the Court has granted summary judgment in Eaglerider's favor on both plaintiffs' screenshot claims, Eaglerider's release defense bears only on Yaakoby's claims with respect to the paper "Rental Out" and "Rental In" forms.[1]

Eaglerider contends that Yaakoby agreed to the contents of the "Terms and Conditions" form when he signed his initials next to paragraph one on page two of his rental contract, which states that "[r]enter(s) agree that they have read and understand the Terms and Conditions attached hereto and agree to be bound by [them]."  Def.'s Stmt., Ex. E to Ex. 1 at 2 ¶ 1.  Paragraph seven of the Terms and Conditions form contains, in relevant part, the following "Waiver of Liability":

> I RELEASE, WAIVE, DISCHARGE, COVENANT NOT TO SUE AND
> AGREE TO HOLD YOU AND YOUR AFFILIATED COMPANIES, AND
> EACH OF THEIR PARTY'S RESPECTIVE DIRECTORS, OFFICERS,
> EMPLOYEES, AGENTS, AFFILIATES AND ASSIGNS (COLLECTIVELY,
> "RELEASED PARTIES"), HARMLESS FROM AND AGAINST ANY AND
> ALL CLAIMS, DAMAGES, LOSSES, LIABILITIES, LEGAL
> PROCEEDINGS, WHETHER CIVIL OR CRIMINAL, PENALTIES, FINES,
> OR OTHER SANCTIONS, THAT MAY HAVE ACCRUED OR MAY
> ACCRUE IN THE FUTURE AGAINST ANY RELEASED PARTY
> DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING IN ANY
> RESPECT TO THE RENTAL OR OPERATION OF THE MOTORCYCLE
> BY ME OR ANY OTHER PERSON. THIS WAIVER AND RELEASE WILL

---

[1] Kelleher never received paper receipts because he never picked up a motorcycle.  For the same reason, he never signed the release discussed in this section.  Plaintiffs suggest it is possible that Kelleher received a paper receipt, but they have not included any such receipt in the record. Further, Eaglerider's declarant Jeffrey Brown stated in his declaration that Eaglerider has no such receipt.  Accordingly, the Court finds no basis for a valid paper-receipt-based FACTA claim on the part of Kelleher.

> INCLUDE, BUT NOT BE LIMITED TO, ANY INJURY, DAMAGE OR LOSS
> TO MY PERSON OR PROPERTY WHICH MAY BE (A) CAUSED BY ANY
> ACT, OR FAILURE TO ACT, BY ANY RELEASED PARTY OR (B)
> SUSTAINED BY ME BEFORE, DURING OR AFTER THE RENTAL.

*Id.*, Ex. F to Ex. 1 at 2 ¶ 7. Yaakoby also signed the "Motorcycle Rental Release of

Liability" form when he picked up the motorcycle. *Id.*, Ex. E to Ex. 1 at 4. That form

contains, in relevant part, the following release language:

> I, the undersigned, on my behalf and on behalf of my heirs, personal
> representatives, successors and assigns (collectively, "heirs and assigns"),
> in consideration of the rental of a motorcycle from . . . EagleRider, Inc. (the
> "Rental Operator"), RELEASE AND DISCHARGE the rental operator . . .
> and each of their respective affiliates, subsidiaries, officers, employees,
> dealers, distributors and agents (the "released parties") from **ANY AND
> ALL CLAIMS, DEMANDS, RIGHTS AND CAUSES OF ACTION
> ("CLAIMS") OF ANY KIND WHATSOEVER WHICH I OR ANY OF MY
> HEIRS AND ASSIGNS NOW HAVE OR LATER MAY HAVE AGAINST
> ANY RELEASED PARTY RESULTING FROM OR ARISING OUT OF MY
> RENTAL OR ANY USE BY ANY PERSON OF THE MOTORCYCLE** . . . .
>
> I acknowledge and understand that this release **EXTENDS TO AND
> RELEASES AND DISCHARGES ANY AND ALL CLAIMS I** or any of my
> heirs and assigns have or may have against the released parties arising
> out of my rental or any use by any person of the motorcycle . . . .

*Id.* (emphasis in original). Yaakoby does not deny that he initialed and signed these two

forms, nor does he allege that he signed them under duress.

Though Eaglerider does not dispute that the "Rental Out" and "Rental Out" forms

are "receipts" within the meaning of FACTA, it argues in its reply memorandum that "the

actual 'receipt' for the transaction was a fully-compliant credit card slip that appears at

Brown Decl., Ex. D." Def.'s Br. 7 n. 5. FACTA requires, however, that parties accepting

credit cards ensure that "*any* receipt provided to the cardholder at the point of the sale or

transaction" complies with the truncation requirements. 15 U.S.C. § 1681c(g)(1)

7

(emphasis added). Because the Rental Out and Rental In forms contain the information listed on the actual receipt, and Eaglerider provided all three documents to Yaakoby personally when he picked up and dropped off the motorcycle, they are all "receipts" within the meaning of FACTA. *Compare* Def.'s Stmt., Ex. E to Ex. 1 at 1 (Rental Out form), *and id*. at 9 (Rental In form), *with id*. at 5 (the "actual receipt"). Thus, the question of whether Yaakoby's "Rental Out" and "Rental In" FACTA claims survive summary judgment depends on whether Yaakoby gave up the claims by signing and initialing the two release documents.

The parties appear to agree that Illinois law governs construction of the releases. "A release is a contract whereby a party abandons a claim to the person against whom the claim exists." *Fuller Family Holdings, LLC v. N. Trust Co.*, 371 Ill. App. 3d 605, 614, 863 N.E.2d 743, 753 (2007). Contract law governs the interpretation of a release. *Id*. (citing *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (1991)). A court's primary goal in interpreting a contract is to give effect to the parties' intent, and to do so the contract "must be construed as a whole, viewing each part in light of the others." *Gallagher v. Lenart*, 226 Ill. 2d 208, 232-33, 874 N.E.2d 43, 58 (2007). "Releases are strictly construed against the benefitting party and must spell out the intention of the parties with great particularity." *Fuller Family Holdings*, 371 Ill. App. 3d at 614, 863 N.E.2d at 753 (citing *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 395, 493 N.E.2d 1022, 1029 (1986)).

Further, "[i]t is clear that a contractual release cannot be construed to include claims not within the contemplation of the parties, and it will not be extended to cover

8

claims that may arise in the future." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 286, 798

N.E.2d 75, 89-90 (2003). Elaborating on this rule, the Illinois Appellate Court recently

noted that

> [i]n many cases, a release makes clear on its face what claims were within
> the contemplation of the parties at the time the release was given. In other
> instances, the release provides very general language that does not
> indicate with any clear definition what claims were within the contemplation
> of the parties. In such cases, "the courts will restrict the release to the thing
> or things intended to be released and will refuse to interpret generalities so
> as to defeat a valid claim not then in the minds of the parties."

*Thornwood, Inc.* v. *Jenner & Block*, 344 Ill. App. 3d 15, 21, 799 N.E.2d 756, 762 (2003)

(quoting *Carlile v. Snap-On Tools*, 271 Ill. App. 3d 833, 839, 648 N.E.2d 317, 321

(1995)). Accordingly, "[w]here a releasing party was unaware of other claims, Illinois law

restricts the release to the particular claims that are explicitly covered by the agreement."

*Fuller Family Holdings*, 371 Ill. App. 3d at 614, 863 N.E.2d at 753.

The two releases that Eaglerider cites are broadly worded. Unlike the settlement

contract in *Gallagher* to which Eaglerider analogizes in its reply brief, the releases do not

address a specific, limited category of claims. *Gallagher*, 226 Ill. 2d at 236, 874 N.E.2d

at 60; Def.'s Reply Br. 10-11. Rather, both releases purport to waive all liability

stemming from the motorcycle rentals. Additionally, both releases—and particularly the

"Motorcycle Rental Release of Liability" form—appear to contemplate the release of

unknown claims. Def.'s Stmt., Ex. F to Ex. 1 at 2 ¶ 7 (releasing "any and all claims . . .

that *may have* accrued or *may accrue in the future*") (emphasis added); *id.*, Ex. E to Ex.

1 at 4 (releasing claims "regardless of whether such claims now exist or hereafter arise

or are known or unknown"). Because the releases make no reference to FACTA claims,

however, the question of whether they bar Yaakoby's FACTA claims turns on whether the parties intended the releases to cover such claims. *Thornwood*, 344 Ill. App. 3d at 12, 799 N.E.2d at 762.

"The intention of the parties controls the scope and effect of [a] release, and this intent is discerned from the release's express language as well as the circumstances surrounding the agreement." *Fuller Family Holdings*, 371 Ill. App. 3d at 614, 863 N.E.2d at 753. In construing the terms of a release, "[g]eneral words of release are restrained in effect by the specific recitals contained in the document." *Id.* A close reading of the Rental Contract and both releases leads the Court to conclude that genuine issues of material fact exist with regard to whether the parties intended the releases to cover FACTA claims.

First, the express words of the release could lead a rational trier of fact to conclude that claims unrelated to the actual use of the motorcycles were not within the contemplation of the parties. The releases make no reference at all to FACTA. If anything, the language used in the releases suggests that Eaglerider was primarily concerned about potential personal injury claims. *See, e.g.,* Def's Stmt., Ex. E to Ex. 1 at 4 (purporting to release claims relating to negligence, strict products liability or breach of warranty, as well as any claims "arising out of my rental *or any use by any person of the motorcycle*" and claims relating to "any injury, damage or loss to *my person or property*") (emphasis added).

Further, the circumstances surrounding Yaakoby's signing of the waiver forms could lead a rational trier of fact to believe that a potential FACTA claim was not in the

10

minds of the parties. Eaglerider admits that the company "did not know about FACTA when Yaakoby arrived to pick up his motorcycle." Def.'s Reply Br. 13. The plaintiffs agree that Eaglerider was unaware of FACTA and further assert that "a release of a FACTA claim was not within the contemplation of Plaintiff Yaakoby at the time" he signed the waiver forms. Pls.' Resp. Br. 5. On the other hand, Eaglerider obliquely suggests in a footnote to its reply brief that Yaakoby was planning to bring a FACTA claim when he signed the waiver forms. Def.'s Reply Br. 10 n. 6 ("Plaintiffs' counsel had already received Kelleher's screen shot, of course, as shown by the facsimile marks on Brown Decl., Ex. C, on September 1, 2009. Yaakoby placed his order on September 11, and visited the Berwyn store thirteen [sic] days later, on September 14.").

Weighing these facts to determine whether the parties intended the releases to cover potential FACTA claims is a job for the trier of fact, not this Court. For example, in *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center*, 137 Ill. App. 3d 294, 484 N.E.2d 841 (1985), the court dealt with a settlement agreement containing a general release of "all claims of any kind." *Id.* at 304, 484 N.E.2d at 847. The defendant argued that this released the plaintiff's retaliatory discharge claim, despite the fact that the release did not reference the claim. The court rejected this argument and applied the rule—repeated years later in *Thornwood*—that when dealing with a general release, "Illinois courts will . . . refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties." *Id.* The court concluded that whether the retaliatory discharge claim was in the minds of the parties was "a question of the parties' intent [that] should be determined by the trier of fact." *Id.* Likewise, in *Janowiak v. Tiesi*, ___ Ill. App. 3d ___, ___, 932 N.E.2d 569 (2010), the court dealt with a release that

11

purported to waive "any and all liability relating to [the defendant's] acts or failure to act as trustee" without specifying claims of the type the plaintiff had brought. *Id.*, 932 N.E.2d at 588. In reversing the lower court's grant of summary judgment, the court stated that "the release is governed by the parties' intent" and concluded that because "plaintiff clearly allege[d] that it was not his intent to release such claims," a genuine issue of material fact existed on whether the plaintiff intended to release the types of claims at issue. *Id.*

For similar reasons, this Court concludes that Eaglerider has failed to show the absence of a genuine issue of material fact on whether FACTA claims were within the parties' contemplation when Yaakoby signed the releases. Accordingly, Eaglerider is not entitled to summary judgment on Yaakoby's remaining claims.

### Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment [docket no. 23] with respect to all claims premised upon the computer screenshots viewed by plaintiffs. The Court denies defendant's motion with respect to plaintiff Yaakoby's claims that are premised upon the "Rental Out" and "Rental In" forms. The case is set for a status hearing on November 10, 2010 at 9:30 a.m. for the purpose of setting a trial date.

MATTHEW F. KENNELLY
United States District Judge

Date: October 28, 2010